UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NEFRETITI MAKENTA, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | |
| : Civil Action No: 06-1093 (JR) | |
| DISTRICT OF COLUMBIA, *et al.*, : | |
| : | |
| Defendants. : | |
| _____: | |

## DEFENDANTS DISTRICT OF COLUMBIA, DAVID CARTER, AND KENNETH BOONE'S MOTION FOR SUMMARY JUDGMENT

Defendants District of Columbia, David Carter, and Kenneth Boone, by and through counsel, move this Court for an order of summary judgment pursuant to FRCP 56(c), on the following grounds:  1) Defendants Carter and Boone are entitled to qualified immunity for arresting plaintiff, 2) Plaintiff cannot maintain her constitutional claim pursuant to 42 U.S.C. § 1983, against the District because a) there is no *respondeat superior* liability for constitutional violations, and b) plaintiff has failed to allege and is unable to establish that her alleged injuries resulted from an unconstitutional District custom, policy or practice, 3) Plaintiff's common law claims against the defendants fail because she has failed to meet her burden of proof in order to prevail, and 4) Plaintiff is not entitled to punitive damages against these defendants.  Support for this motion is more fully set forth in the accompanying memorandum of points and authorities attached hereto and incorporated herein.  Counsel for plaintiff does not consent to the relief requested in this motion.

WHEREFORE, defendants pray this Court that judgment be entered in their favor and that the complaint be dismissed with prejudice.

        Respectfully submitted,

        LINDA SINGER
        Attorney General for the District of Columbia

        GEORGE C. VALENTINE
        Deputy Attorney General
        Civil Litigation Division

        _____\s_____
        PATRICIA A. JONES [428132]
        Chief, General Litigation Sec. IV

By:    _____\s_____
        MICHAEL P. BRUCKHEIM [455192]
        Assistant Attorney General
        441 4TH Street, NW, 6th Floor-South
        Washington, D.C. 20001
        202-724-6649; 202-727-6295
        E-mail: Michael.bruckheim@dc.gov
        Counsel for Defendants

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NEFRETITI MAKENTA, | : |
|     Plaintiff, | : |
| v. | : |
| | :   Civil Action No: 06-1093 (JR) |
| DISTRICT OF COLUMBIA, *et al.*, | : |
|     Defendants. | : |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS DISTRICT OF COLUMBIA, DAVID CARTER AND KENNETH BOONE'S MOTION FOR SUMMARY JUDGMENT**

In support of their motion for summary judgment, defendants District of Columbia, David Carter, and Kenneth Boone state as follows:

**PRELIMINARY STATEMENT**

**I.    Statement of the Relevant Facts.**

This lawsuit arises out of plaintiff's arrest which took place on or about April 12, 2005.  *See* Complaint, ¶ 8.  According to the evidence, defendant Carter, in conjunction with co-defendant ACS, was on a surveillance operation in an area where working parking meters had frequently been rendered inoperable.  Exhibit #1, Deposition of David Carter, at 57:10-22; 58:1-11.  Prior to the incident with plaintiff, the parking meter that she used was in proper working order and did not have a fail sign on it.  *Id.,* at 45: 13-20.  Defendant Carter observed the plaintiff putting objects into the meter and then saw the fail sign flash while she was at the meter.  *Id.,* at 37: 19-22; 38: 1-4; 46: 6-8.  After plaintiff left the meter, the meter was immediately inspected and paper was discovered.  *Id.,* at

3

46: 9-15. Defendant Carter believed that plaintiff inserted paper into the parking meter and caused it to jam and be rendered inoperable. *Id.,* at 46: 16-22; 47: 1.

Aaron Gamble was part of the surveillance team on the day of the incident that is the subject of this lawsuit. He told defendant Carter that he observed plaintiff putting the paper in the meter to render it inoperable. *Id.,* at 48: 2-21. Carter believed that Gamble had a totally unobstructed view of the plaintiff at the meter and had no reason to question Gamble's observation. *Id.,* at 48: 22; 49: 1-9. Based on his and Gamble's observations, Plaintiff was arrested for felony destruction of government property. *Id.,* at 50: 14-22; 51: 1-16. Carter had a good faith belief that plaintiff had committed the crime and acted in accordance with his belief he arrested her. *Id.,* at 51: 7-16.

Defendant Boone testified that when he first arrived on the scene, defendant Carter and Gamble had already initiated contact with plaintiff. Exhibit #2, Deposition of Kenneth Boone, at 20:15-22; 21:1. Defendant Boone testified that he wasn't there to see what plaintiff did before defendant Carter and Gamble initiated contact with plaintiff, but had no reason to disbelieve either Carter or Gamble. *Id.,* at 21: 2-11, and 73: 12-20.

Plaintiff testified that the officers informed her that she was being arrested because she had put paper into the parking meter. Exhibit #3, Deposition of Nefretitti Makenta, at 40: 19-22. Plaintiff testified that she did not put any paper in the parking meter and that the arresting officers were **mistaken** to think so. *Id.,* at 40: 7-14. Plaintiff testified that she was told she was being arrested because somebody said they saw something, but that whatever the officers were told about what somebody saw, they were mistaken. *Id.,* at 41:10-15. Plaintiff has presented no proof that the officers intentionally arrested her based on information that knew to be false. *Id.,* at 41:5-9.

Plaintiff has pled a civil rights violation under 42 U.S.C. § 1983, against the defendants, in addition to common law claims for false arrest, false imprisonment, and intentional infliction of emotional distress. *See* Complaint, generally. As set forth below, these defendants are entitled to summary judgment on all claims filed against them.

## ARGUMENT

### I.    STANDARD OF REVIEW.

Pursuant to the Federal Rules of Civil Procedure, summary judgment is proper " if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FRCP 56(c).  "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The mere existence of a factual dispute will not preclude summary judgment. Only factual disputes that may determine the outcome of a suit may effectively preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986).  To be a genuine fact, the assertion must be supported by sufficiently admissible evidence and cannot be based on conclusory allegations, denials or opinions. *Crenshaw v. Georgetown University,* 23 F. Supp. 2d. 11 (D.D.C. 1998).

### II.    DEFENDANTS CARTER AND BOONE ARE PROTECTED BY QUALIFIED IMMUNITY AND ARE ENTITLED TO SUMMARY JUDGMENT

Defendants Carter and Boone are entitled to judgment as a matter of law on plaintiff's Fourth Amendment claims under 42 U.S.C. § l983, because they are protected by their qualified

immunity defense. Plaintiff's arrest was based on probable cause, and these defendants acted reasonably in effectuating plaintiff's arrest. They did not violate any clearly established right.

A police officer making an arrest is generally shielded from personal liability for civil damages with respect to constitutional claims brought under 42 U.S.C. § 1983, by the doctrine of qualified immunity insofar as his or her conduct does not violate clearly established rights of which a reasonable person would have known. *See Hunter v. District of Columbia*, 943 F.2d 69, 75 (D.C. Cir. 1991). The purpose of qualified immunity is to protect governmental employees against insubstantial lawsuits which have the following societal costs: 1) expenses of litigation; 2) diversion of official energy from pressing public issues; 3) deterrence of able citizens from acceptance of public office; and 4) the possibility that the fear of being sued will dampen the ardor of all but the most resolute individuals. *Harlow v. Fitzgerald*, 457 U.S. 800, 814 (1982).

Qualified immunity shields an individual officer from liability as long as his action could reasonably have been thought to be consistent with the rights they are alleged to have violated. *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). A police officer should prevail on the qualified immunity defense even if he is mistaken, if a reasonable officer could have believed that the action taken was not in violation of clearly established constitutional law. *See Anderson*, 483 U.S. at 641. *See also*, *District of Columbia v. Evans*, 644 A.2d 1008, 1015 (D.C. 1994). As noted by Justice Scalia in *Anderson*, supra, " ... it is inevitable that law enforcement officials will, in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials - like other officials who act in ways they reasonably believe to be lawful - should not be held personally liable." *Id.* at 641. Qualified immunity thus protects all but the plainly incompetent or those who knowingly violate the law.

Recent Supreme Court opinions have made clear that, in analyzing claims of qualified immunity, courts must begin by determining "whether the plaintiff has alleged a deprivation of a constitutional right at all." *County of Sacramento v. Lewis*, 118 S. Ct. 1708, 1714 n. 5 (1998). Only upon finding that the purported constitutional right exists should a court proceed to the determination of whether the constitutional right was clearly established at the time of the official action. *See Conn v. Gabbert*, 119 S. Ct. 1292, 1295 (1999) ("[A] court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation.")

Deciding the constitutional question before addressing whether a right was clearly established "promotes clarity in the legal standards for official conduct, to the benefit of both officers and the general public." *Wilson v. Layne*, 119 S. Ct. 1692, 1697 (1999). "The chronic difficulty with this [qualified immunity] analysis for courts is in accurately defining the right at issue. An overly narrow definition of the right can effectively insulate the government's actions by making it easy to assert that the narrowly defined right was not clearly established. On the other hand, as the Supreme Court has noted in *Anderson*, if the right is defined too broadly, '[p]laintiffs would be able to convert the rule of qualified immunity that our cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.'" *See LaBounty v. Coughlin*, 137 F.2d 68, 73, 74 (2nd Cir. 1998) (quoting *Anderson*, 483 U.S. at 639).

In the case at bar, neither defendant Carter nor Boone violated plaintiff's Fourth or Fifth Amendment rights, given the information they had. Defendant Carter observed the plaintiff putting objects into the meter and then saw the fail sign flash while she was at the meter. Exhibit #1,

Deposition of David Carter, at 37: 19-22; 38: 1-4; 46: 6-8.  After plaintiff left the meter, the meter was immediately inspected and paper was discovered.  *Id.,* at 46: 9-15.  Defendant Carter believed that plaintiff had inserted paper into the parking meter and rendered it inoperable.  *Id.,* 46: 16-22; 47: 1.?  Aaron Gamble, who was part of the surveillance team, he told defendant Carter that he observed plaintiff putting the paper in the meter to render it inoperable.  *Id.,* at 48: 2-21.  Carter believed that Gamble had a totally unobstructed view of the plaintiff at the meter and had no reason to question Gamble's observation.  *Id.,* 48: 22; 49: 1-9.  Based on his own observations and that of Gamble, defendant Carter arrested plaintiff.

According to defendant Boone, on the day of the incident, "[w]e were doing an operation in reference to the intelligence of the ACS employees, saying that that was an area that people were damaging the meters. Exhibit #2, Deposition of Kenneth Boone*,* at 8:19-22.  Defendant Boone testified that when he arrived on the scene, defendants Carter and Mr. Gamble were already talking to plaintiff.  He did not see anything that struck him as improper or unlawful about the arrest.  *Id.,* 20:18-21:1, 22:13-16, and 71: 14-18.  Because defendant Boone had not observed the incident, he did not consider plaintiff's arrest to be his.  *Id.,* at 25:20-26:2.  While on the scene, defendant Boone attempted to assist "by asking [plaintiff] to turn around and be cooperative." *Id.,* at 26:9-11. Defendant Boone also assisted in handcuffing plaintiff because he believed she was being combative and resistant to being handcuffed. *Id.,* at 36:2-13.

Plaintiff testified that she was told that she was being arrested because someone said she put paper in the parking meter. Exhibit #3, Deposition of Nefretitti Makenta, at 40:19-22.  Plaintiff testified that she put a quarter in the meter, but did not put paper in it.  *Id.,* 14: 21-22, 40: 7-10.  <u>When queried during deposition as to whether handcuffs were placed on</u>

her at the scene of the incident, plaintiff testified that "[she] made it difficult…" *Id.* at 29:3-10.

Defendants Carter and Boone should prevail on their qualified immunity defense even if they were mistaken that plaintiff committed the criminal act, if a reasonable officer could have believed that the action taken was not in violation of clearly established constitutional law. *Anderson*, 483 U.S. at 641. *See also*, *District of Columbia v. Evans*, 644 A.2d l008, l0l5 (D.C. 1994). A reasonable police officer could have reasonably believed that there was probable cause to arrest plaintiff for destruction of property. There is no record evidence that defendants Carter or Boone acted *improperly.* Under *Anderson,* officers can make mistakes so long as their action was not in violation of clearly established constitutional law. The actions of defendants Carter and Boone do not rise to that level. Defendant Carter believed he saw plaintiff put paper in the meter, and was told by Gamble that plaintiff put paper in the meter. Plaintiff concedes that she made it difficult for the officers to handcuff her. As a result, defendant Boone assisted in the arrested. Both officers acted reasonably in response to their observations and took appropriate action. Based on this record evidence, defendants Carter and Boone are entitled to qualified immunity for their complained-of conduct.

### III.    PLAINTIFF'S CONSTITUTIONAL CLAIMS AGAINST THE DISTRICT OF COLUMBIA MUST FAIL.

Plaintiff seeks to hold the District liable for the alleged unconstitutional torts committed by its employees. The Supreme Court, in *Monell v. Dep't of Social Servs. of the City of New York*, 436 U.S. 658, 694 (1978), held that while § 1983, claims can be maintained against municipalities, "a municipality can be found liable under § 1983, only where the municipality

itself causes the constitutional violation at issue. *Respondeat superior* or vicarious liability will not attach under § 1983." *See, City of Canton v. Harris*, 489 U.S. 378 (1989). Therefore, "[a] city is answerable under *Monell* when an official policy or custom causes the complainant to suffer a deprivation of constitutional right." *Carter v. District of Columbia*, 795 F.2d 116, 122 (D.C. 1986). "[A] city's inaction, including its failure to train or supervise its employees adequately, constitutes a `policy or custom' under *Monell* when it can be said that the failure amounts to `deliberate indifference' towards the constitutional rights of persons in its domain." *See Daskalea v. District of Columbia*, 227 F.3d 433, 441 (D.C. 2000) (quoting *City of Canton*, 489 U.S. at 388-89 & n.7). Therefore, to prevail on a deliberate indifference claim, it is not enough to show simply that a municipal employee applied a constitutional policy in an unconstitutional manner. Such a standard would result in *de facto respondeat superior* liability. *See City of Canton*, 489 U.S. at 391-92. Rather, where a plaintiff alleges that municipal officers applied a constitutional policy in an unconstitutional way, he must establish that the District's inaction rose to the level of deliberate indifference and that the inaction caused his injuries. *Id.* at 388-91.

      The record herein exhibits an absence of evidence on plaintiff's claim of deliberate indifference and/or that any District custom, practice or policy was the moving force behind the alleged unconstitutional misconduct. Plaintiff merely makes conclusory statements that the District was deliberately indifferent in conjunction with defendants Carter and Boone. *See* Complaint, Count VI. It is not enough to allege that the existing program represents a policy for which the city is responsible. *City of Canton*, 489 U.S. at 389. Furthermore, "that a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city." *Id.* "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality can a

city be liable." *Id.* at 388.  Thus to support such a claim plaintiff must present "concentrated, fully packed, precisely delineated scenarios" demonstrating the existence of a pattern or policy. *Carter*, 795 F.2d at 125.  Plaintiff's allegation must fail against the District as there is no proof of a constitutional violation, much less one that was committed in furtherance of an unconstitutional policy.   Plaintiff has not shown that the District has a policy, custom or practice that resulted in her arrest, nor has she shown that the officers were untrained or that there was a deficiency training officers.  Accordingly, the District is entitled to summary judgment as to all constitutional claims against it.

### IV.     PLAINTIFF'S COMMON LAW CLAIMS MUST BE DISMISSED.

Plaintiff has alleged false arrest and imprisonment and intentional infliction of emotional distress (IIED) against defendants.  For the following reasons, those claims may not be maintained against these defendants.

#### A.     Plaintiff's Claims of False Arrest and Imprisonment Fail As A Matter of Law.

"A false arrest is committed when one person intentionally and unlawfully arrests another."  See D.C. Civil Jury Instruction #18-2.  *See also, District of Columbia v. Murphy*, 631 A.2d 34, 36 (D.C. 1993) (holding an arrest is a false arrest if there is insufficient legal justification for the arrest).  A cause of action for false arrest or imprisonment depends upon an "unlawful detention."  *See Smith v. District of Columbia,* 399 A.2d 213, 218 (D.C. 1979).  An officer may show that he had probable cause in order to defeat a false arrest claim.  "An officer has probable cause to arrest if he or she has reason to believe that a crime has been or is about to be committed."  *See* D.C. Civil Jury Instruction #18-3. *See also*, *Robinson v. District of

*Columbia,* 2006 U.S. Dist. LEXIS 68122, p.31-32 (Judge Lamberth, September 21, 2006)(holding that the showing of probable cause is sufficient to defeat a claim of false arrest).

"There is no practical distinction between false arrest and false imprisonment." *See Shaw v. May Dept Stores Co.,* 268 A.2d 607, 607 (D.C. 1970), and *District of Columbia v. Gandy*, 450 A.2d 896, 988 (treating the two torts as identical). In this case, defendant Carter reasonably believed he had probable cause to arrest plaintiff. Defendant Carter observed what he believed to be plaintiff inserting paper in a parking meter to render it inoperable. Defendant Carter was also told by Gamble that he observed plaintiff committing the same criminal misconduct. Based upon these facts, defendant Carter arrested plaintiff.

Defendant Boone observed plaintiff resisting arrest and assisted his colleague in handcuffing plaintiff. Based on information he received from his fellow officers, and based on his observations of plaintiff at the scene, he was justified in taking the action that he did.

Based on the evidence in this record, neither defendant Carter nor Boone may be held liable for false arrest/false imprisonment.

> **B. Plaintiff's Intentional Infliction of Emotional Distress (IIED) Claim Fails As A Matter of Law.**

To recover on a claim for IIED, a plaintiff must demonstrate extreme and outrageous conduct which intentionally or recklessly caused severe emotional distress. *See Jackson v. District of Columbia,* 412 A.2d 948, 956-57 (D.C. 1980). The conduct must be so outrageous in character and so extreme as to go beyond all possible bounds of decency. *Id.* at 957. An action for IIED may be maintained against an arresting officer if he made a lawful arrest but applied a serious amount of excessive force, or if he made an egregiously unlawful arrest. *Kinberg v. District of Columbia,* 1998 U.S. Dist. LEXIS 339, 46-47 (D.D.C. 1998).

There is absolutely no evidence that defendants Carter or Boone's conduct rose to the level of outrageousness that is required to maintain a successful claim for IIED. Plaintiff's arrest was supported by probable cause, and their conduct, as described by plaintiff, was not outrageous nor clearly egregious.

The plaintiff in *Jackson*, supra, was awakened by officers who entered his home to arrest him for selling stolen goods. The officers later learned that plaintiff was not the right suspect and released him. *Id.* However, to effect the arrest, the officers entered plaintiff's bedroom with their guns drawn and awakened him. *Id.* Plaintiff described his reaction in the following manner: "I woke up with a gun in my face. The gun in my face filled me with fright. Sometimes at night I have nightmares over the whole incident. I wake up because I see this gun in my face, and this gun pointed at me. When I saw the gun in my face and I looked again, there was another gun pointed at me by an agent present. These things still scare me to death." *Id.* at 955-56.

In this case, plaintiff alleges that the officers were mistaken in arresting her. Exhibit #3, Deposition of Nefretitti Makenta, 41: 5-15. While she alleges that she suffered emotional harm from the arrest, her alleged injuries alone do not give rise to a claim for IIED. It is the *conduct* of the officers that is the focal point. In this case, the conduct of the officers was clearly reasonable, as discussed in part II, *supra*. The *Jackson* case gave rise to more serious facts than those alleged by plaintiff in this matter, and the defendant officers prevailed. Similarly, defendants Carter, Boone and the District are entitled to summary judgment as to plaintiff's claim of IIED as the record evidence does not support plaintiff's claims.

V.     **Plaintiff Cannot Maintain a Claim for Punitive Damages against the Defendants**

Plaintiff seeks punitive damages against the defendants. *See* Complaint. For the following reasons, plaintiff may not be awarded punitive damages against these defendants.

A.     **Punitive Damages Do Not Lie Against the District.**

Plaintiff's punitive damage claim fails as a matter of law because punitive damages may not be awarded against the District of Columbia. *See Finkelstein v. District of Columbia*, 593 A.2d 591, 599 (D.C. 1991) (". . . punitive damages may not be awarded against the District of Columbia") (citing *Smith v. District of Columbia*, 336 A.2d 831, 832 (D.C. 1975); *see also Ramos v. District of Columbia Dep't of Consumer and Regulatory Affairs*, 601 A.2d 1069, 1074, n.9 (D.C. 1992). Both the U.S. Supreme Court and the District Courts in this jurisdiction have determined that, absent an express statutory mandate, punitive damages are not recoverable against municipalities such as the District. *See City of Newport v. Fact Concerts*, 453 U.S. 247, 260, n.21; *Smith*, 336 A.2d at 832; *Teart v. Washington Metropolitan Area Transit Authority*, 686 F. Supp. 12 (D.D.C. 1988)[1]; *see also Excavation Construction, Inc. v. Washington Metropolitan Area Transit Authority*, 624 F. Supp. 582, 588 (D.D.C. 1984) (D.C. law does not authorize award of punitive damages against a governmental entity in absence of statute).

The D.C. Council has legislated to protect the District from punitive awards, even where the tortious conduct may be outrageous and very harmful. *See* D.C. Official Code § 2-423 (2001 ed.) (punitive damages may not be awarded for unjust criminal imprisonment). Accordingly, the District is entitled to summary judgment as a matter of law on plaintiff's punitive damages claim.

---

[1] The District Court noted that the "exceptional circumstances" language in *Smith* was mere *dicta*, not binding upon the Court. That Court further observed, however, that no case had determined the "exceptional circumstances" threshold to have been satisfied and went on to state that it would not set the baseline.

**B.    Plaintiff Is Not Entitled to Punitive Damages Against Defendants Carter and Boone.**

Punitive damages are generally awardable to punish tortfeasors and deter similar conduct, but only where the defendant's conduct was particularly outrageous, demonstrating reckless disregard for the rights of others.  Mere inadvertence or even gross negligence is insufficient. *Rieser v. District of Columbia,* 563 F.2d 462, 481, n.10 (D.C. 1977).  As discussed in Section IV(b), *supra,* defendants Carter and Boone's acts do not rise to the level of outrageousness that is necessary for plaintiff to maintain a claim for punitive damages.  Defendants Carter and Boone's acts were supported by probable cause and there is no allegation or evidence that any force used to effect the arrest was excessive.  Because plaintiff has not shown that either defendant Carter and Boone's acts were outrageous, nor has she shown that these defendants displayed a reckless disregard for her rights, defendants Carter and Boone are entitled to judgment on that claim.

**VIII.   CONCLUSION**

WHEREFORE, defendants District of Columbia, David Carter, and Kenneth Boone respectfully request this Court to grant their motion for summary judgment and dismiss this case with prejudice as to all of plaintiff's claims for the reasons set forth above.

Respectfully submitted,

LINDA SINGER
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

_____\\s\\_____
PATRICIA A. JONES [428132]
Chief, General Litigation Sec. IV

By: _____\s_____
MICHAEL P. BRUCKHEIM [455192]
Assistant Attorney General
441 4TH Street, NW, 6th Floor-South
Washington, D.C. 20001
202-724-6649; 202-727-6295
E-mail: Michael.bruckheim@dc.gov
Counsel for Defendants

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| NEFRETITI MAKENTA, | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | Civil Action No: 06-1093 (JR) |
| DISTRICT OF COLUMBIA, *et al.*, | : | |
| Defendants. | : | |
| _____ | : | |

**DEFENDANTS' STATEMENT OF MATERIAL FACTS WHICH ARE NOT IN DISUPUTE**

Defendants District of Columbia, David Carter, and Kenneth Boone, by and through counsel, hereby submit that the following material facts are not in dispute:

1. Defendant Carter, in conjunction with co-defendant ACS, was on a surveillance operation in an area where working parking meters had frequently been rendered into non-working meters. Exhibit #1, Deposition of David Carter, 57:10-22; 58:1-11.

2. Prior to the incident with plaintiff, the parking meter that she used was in proper working order and did not have a fail sign on it. Exhibit #1, Deposition of David Carter, 45: 13-20.

3. Defendant Carter observed the plaintiff putting objects into the meter and then saw the fail sign flash while she was at the meter. Exhibit #1, Deposition of David Carter, 37: 19-22; 38: 1-4; 46: 6-8.

4. After plaintiff left the meter, the meter was immediately inspected and paper was discovered. Exhibit #1, Deposition of David Carter, 46: 9-15.

5. Aaron Gamble was part of the surveillance team and he told Carter that he observed plaintiff putting the paper in the meter to render it inoperable. Exhibit #1, Deposition of David Carter, 48: 2-21.

6. Defendant Carter believed that Gamble had a totally unobstructed view of the plaintiff at the meter and had no reason to question Gamble's observation. Exhibit #1, Deposition of David Carter, 48: 22; 49: 1-9.

7. Defendant Carter had reason to believe that plaintiff had committed the crime and acted in accordance with his belief when he arrested her. Exhibit #1, Deposition of David Carter, 51: 7-16.

8. Defendant Boone testified that when he first arrived on the scene, defendant Carter and Gamble had already initiated contact with plaintiff. Exhibit #2, Deposition of Kenneth Boone, 20: 15-22; 21:1.

9. Defendant Boone testified that when he arrived on the scene, he did not see anything that struck him as an improper or unlawful arrest. Exhibit #2, Deposition of Kenneth Boone, 71: 14-18.

10. Defendant Boone testified that based upon what he observed at the scene, he reasonably believed that plaintiff had committed a crime. Exhibit #2, Deposition of Kenneth Boone, 73: 12-20.

11. Plaintiff testified that she did not put any paper in the parking meter and that the arresting officers were mistaken to think so. Exhibit #3, Deposition of Nefretitti Makenta, 40: 7-14.

12. Plaintiff testified that the officers informed her that she was being arrested because she had put paper into the parking meter. Exhibit #3, Deposition of Nefretitti Makenta, 40:19-22.

13. Plaintiff testified that she was told she being arrested because somebody said they saw something, but that whatever the officers were told about what somebody saw, they were mistaken. Exhibit #3, Deposition of Nefretitti Makenta, 41:10-15.

14. Plaintiff testified that she made it difficult for the officers to handcuff her. Exhibit #3, at 29:3-10.

                                              Respectfully submitted,

                                              LINDA SINGER
                                              Attorney General for the District of Columbia

                                              GEORGE C. VALENTINE
                                              Deputy Attorney General
                                              Civil Litigation Division

                                              _____\s_____
                                              PATRICIA A. JONES [428132]
                                              Chief, General Litigation Sec. IV

By:        _____\s_____
            MICHAEL P. BRUCKHEIM [455192]
            Assistant Attorney General
            441 4TH Street, NW, 6th Floor-South
            Washington, D.C. 20001
            202-724-6649; 202-727-6295
            E-mail: Michael.bruckheim@dc.gov
            Counsel for defendants

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NEFRETITI MAKENTA, : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : Civil Action No: 06-1093 (JR) <br> DISTRICT OF COLUMBIA, *et al.*, : <br> : <br> Defendants. : <br> _____: | |

## **ORDER**

Upon consideration of defendants District of Columbia, David Carter, and Kenneth Boone's Motion for Summary Judgment, the Memorandum of Points and Authorities in support thereof, any opposition thereto, and the record herein, it is, this \_\_\_\_ day of _____, 200\_\_;

ORDERED: that defendants' Motion for Summary Judgment is hereby granted for the reasons set forth in their motion; and it is

FURTHER ORDERED: that judgment as a matter of law is hereby entered in favor of defendants District of Columbia, David Carter, and Kenneth Boone.

_____

Judge James Robertson