## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **NEFRETITI MAKENTA,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | Civil Action No. 06-1093 (JR) |
| vs. | ) | |
| | ) | |
| **DISTRICT OF COLUMBIA, et al.,** | ) | |
| | ) | |
| Defendants. | ) | |

### DEFENDANT ACS GOVERNMENT SYSTEMS, INC.
### MOTION FOR SUMMARY JUDGMENT

Defendant ACS Government Systems, Inc. (hereinafter "ACS"), by and through

undersigned counsel, moves this Court pursuant to Fed. R. Civ. P. 56( c) for an order of summary

judgment in the above-captioned matter.  As reasons for the grant of this motion, ACS cites the

accompanying memorandum of points and authorities.

Counsel for Plaintiff does not consent to the grant of the instant motion.

Respectfully submitted,


/s/ Frederick D. Cooke, Jr.
_____

Frederick D. Cooke, Jr., D.C. Bar No. 164608
Rubin, Winston, Diercks, Harris & Cooke, LLP
1155 Connecticut Avenue, NW, Suite 600
Washington, D.C. 20036
202 861 0870
202 429 0657 (facsimile)

Counsel for
ACS Government Systems, Inc.

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **NEFRETITI MAKENTA,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | Civil Action No. 06-1093 (JR) |
| vs. ) | |
| ) | |
| **DISTRICT OF COLUMBIA, et al.,** ) | |
| ) | |
| Defendants. ) | |

## DEFENDANT AFFILIATED COMPUTER SYSTEMS
## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
## <u>MOTION FOR SUMMARY JUDGMENT</u>

In support of its motion for summary judgment filed herein, Defendant ACS Government

Systems, Inc. (hereinafter "ACS"), by and through undersigned counsel, states as follows:

### Background

Plaintiff Nefretiti Makenta ("Plaintiff") was arrested on April 12, 2005 and charged with

destroying public property (a parking meter) in violation of D.C. Code section 22-303 (2001

Ed.).   Complaint at ¶ ¶ 8 and 11. The arrest of Plaintiff stemmed from a surveillance operation

that was being conducted by officers of the Metropolitan Police Department (hereinafter

"District").  Exhibit 1, Deposition of Officer David Carter, at 57:10-22 and  58:1-11.  The

surveillance operation was being conducted in an area of the city where working parking meters

had frequently been rendered inoperable.  Exhibit 1 at 8:20-22 and 9:1-7.  Prior to beginning the

surveillance operation, each of the parking meters on the street was inspected by Metropolitan

Police Officers and by representatives of ACS to determine if they were operable.   Exhibit 2,

Deposition of Aaron Gamble, at pp. 45-51. Exhibit 1 at 13:3-8 and 40:14-17. All of the parking meters on the street on which Plaintiff was arrested, including the parking meter that Plaintiff was charged with destroying, were found to be operating properly. Exhibit 1 at 59:7-9. Exhibit 2 at 49: 18-21.

Officer Carter and ACS employee Aaron Gamble observed Plaintiff approach one of the parking meters, and put something into the parking meter. Exhibit 1 at 23:15-22 and Exhibit 2 at 67:4-7. Plaintiff walked away from this parking meter, Officer Carter and Mr. Gamble saw the fail sign flash on the parking meter. Exhibit 1 at 27:4-12 and Exhibit 2 at 71:1-7. The fail sign had not been flashing on the parking meter before Plaintiff was seen putting something into the parking meter. Exhibit 1 at 45:6-8 and 46:6-8. Exhibit 2 at 71:1-7.

Immediately after Plaintiff left the parking meter, Mr. Gamble inspected the parking meter and saw a piece of paper in the coin track of the parking meter. Exhibit 2 at 71:1-7. Mr. Gamble saw a piece of paper in the coin track of the parking meter. Exhibit 2 at 71:20. Mr. Gamble pointed out to Officer Carter the piece of paper that was in the coin track of the parking meter. Exhibit 2 at 74:19-22.

Officer Carter believed that Mr. Gamble had a totally unobstructed view of Plaintiff putting something into the parking meter. Exhibit 1 at 49:3-9. Mr. Gamble showed Officer Carter the piece of paper in the coin track of the parking meter. Exhibit 2 at 74:19:22. Subsequently, Mr. Gamble opened the parking meter and showed the piece of paper that was jammed in the coin track of the meter to Plaintiff. Exhibit 2 at 76:18-22.

Based on his own observations and those of Mr. Gamble, Officer Carter arrested Plaintiff for destruction of public property. Exhibit 1 at 37: 14-18 and 51:7-16.

2

Officer Kenneth Boone testified that when he first arrived Officer Carter and the ACS employees had already initiated contact with Plaintiff. Exhibit 4, Deposition of Kenneth Boone at 20:15-22 and 21:1. Officer Boone did not personally observe Plaintiff's actions regarding the parking meter, but he had no reason to disbelieve Officer Carter's account of the events. Exhibit 4 at 21:2-11 and 73:12-20.

Officers Carter and Boone arrested Plaintiff (Exhibit 1 at 50:6-8), and Plaintiff did not cooperate with the arrest. Exhibit 1 at 43: 14-18 and Exhibit 4 at 26:6-11. Officer Boone states that the officers were trying to be gentle in arresting Plaintiff. Exhibit 4 at 27:9-14. Plaintiff has provided no evidence that her arrest by the officers was outrageous or that the officers used excessive force in making the arrest.

Plaintiff testified at her deposition that the officers informed her that she was being arrested because she had put paper into the parking meter. Exhibit 3 Deposition of Nefretiti Makenta at 40:19-22. Plaintiff denied putting paper into the parking meter, and stated that the arresting officers were mistaken in believing that she had done so. Exhibit 3 at 40:7-15. Plaintiff has presented no evidence and no testimony that Officers Carter or Boone, or the ACS employees intentionally arrested her based on information that they knew to be false. Exhibit 3 at 41:5-11.

Plaintiff has filed a lawsuit against Officers Carter and Boone, the District of Columbia[1], and ACS in which she alleges false arrest, false imprisonment, intentional infliction of emotional distress, defamation per se (against ACS only), false light (against ACS only), and deprivation of

---

[1] The District of Columbia, Officer Carter and Officer Boone have filed a motion for summary judgment in this matter. To the extent allowed by the Rules of this Court, ACS adopts and incorporates the arguments of that motion into the instant motion.

3

rights under 42 U.S.C. section 1983. Complaint. ACS submits, for the reasons stated herein, that it is entitled to summary judgment on all the claims filed against it by Plaintiff.

**Argument**

## I.    Standard of Review

Fed. R. Civ. P. 56( c) provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The entry of summary judgment is mandated against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial. See, Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The mere existence of a factual dispute will not preclude a grant of summary judgment. Only factual disputes that may determine the outcome of the lawsuit may effectively preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). In opposing a motion for summary judgment, the non-moving party cannot simply rely on conclusory statements or allegations. Greene v. Dalton, 334 U.S. App. D.C. 92, 164 F. 3d 671, 675 (D.C. Cir. 1999). Rather the non-moving party must come forward with specific facts which, when viewed in the context of the record as a whole, could lead a rational jury to find for that party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).

## II.    False Imprisonment and False Arrest

Plaintiff alleges that she was unlawfully and without legal justification detained by ACS, and has filed a claim for false arrest and a claim for false imprisonment against ACS.

4

A cause of action for false arrest or false imprisonment requires an unlawful detention. See, Smith v. District of Columbia, 399 A.2d 213, 218 (D.C. 1979). In the District of Columbia, there is no practical difference between false arrest and false imprisonment. Lyles v. Micenko, 468 F. Supp. 2d 68, 74, n.7 (D.D.C. 2006); Shaw v. May Dep't. Stores Co., 268 A.2d 607, 609, n.2 (D.C. 1970).

Here, Officer Carter arrested Plaintiff because he had probable cause for his arrest of Plaintiff. That probable cause was based on (1) his observation of Plaintiff approaching a parking meter that Officer Carter and ACS employees previously had inspected, and found to be empty and in good working order (Exhibit 1 at 40:14-17 and 39:1-2); (2) his observation of Plaintiff placing something in the parking meter ( Exhibit 1 at 36:17-19 and 37:1-10); (3) his observation of the parking meter showing "fail" as Plaintiff left the parking meter (Exhibit 1 at 38:10-12); (4) his observation of a piece of paper in the parking meter (Exhibit 1 at 38:13-17); and (5) the confirmatory observations of Mr. Gamble (Exhibit 1 at 51:7-16). A false arrest claim may be defeated when an officer shows that he had probable cause to make an arrest. Robinson v. District of Columbia, 2006 U.S. Dist. LEXIS 68122, p. 31-32 (D.D.C. 2006); Koroma v. United States, 628 F. Supp. 949, 952 (D.D.C. 1986).

Plaintiff was arrested by Officer Carter who had probable cause to arrest Plaintiff for destruction of public property. Exhibit 1 at 11:2-6. Officer Carter based his decision to arrest Plaintiff on his personal observations as well as the statements made to him by Mr. Gamble. Exhibit 1 at 49:18-22 , at 50:1-13, and 37:14-18. The observations of Officer Carter alone provided a reasonable basis for the arrest of Plaintiff. The record in this matter demonstrates that Officer Carter had both probable cause and a reasonable basis to arrest Plaintiff for destruction of

5

public property so as to defeat Plaintiff's claims of false arrest and/or false imprisonment.

Nowhere in the record of this matter is there any evidence that Plaintiff was arrested or imprisoned by ACS (or any of its employees). Exhibit 2 at 101:1-22 and 102:1. The record in this matter makes clear beyond argument that Plaintiff was arrested by members of the Metropolitan Police Department, (Exhibit 1 at 37: 14-18; Exhibit 3 at 28: 8-22 and 41:4-15; Exhibit 4 at 26:6-17 and 29:3-11) and that the decision to arrest Plaintiff was made by officers of the Metropolitan Police Department based, at least in part, on their personal observations of Plaintiff's conduct. Exhibit 1 at 49:18-22 and 50:1-13.

The record in this matter makes it clear that Officer Carter had both probable cause and a reasonable basis for arresting Plaintiff for destruction of public property. The existence of probable cause and/or a reasonable basis for the arrest are fatal to Plaintiff's claims of false imprisonment and false arrest on April 12, 2005, and they both fail as a matter of law.

Moreover, ACS was not the cause of Plaintiff's arrest, or detention  Plaintiff has provided absolutely no evidence in the record of this matter that establishes that ACS arrested or detained Plaintiff on or about April 12, 2005. Because Plaintiff's arrest by Officers Carter and Boone was based on probable cause or a reasonable basis, and because the record in this matter cannot establish that ACS arrested or detained Plaintiff, the claim of false imprisonment or false arrest against ACS must fail as a matter of law.

## III.  **Intentional Infliction of Emotional Distress**

Plaintiff alleges that she suffered emotional distress when she was arrested for a crime of which she was falsely accused of committing.

In order for Plaintiff to recover on a claim of intentional infliction of emotional distress, she must show that ACS engaged in extreme and outrageous conduct that intentionally or recklessly caused her severe emotional distress. Jackson v. District of Columbia, 412 A.2d 948, 956-57 (D.C. 1980). As noted above, there is no evidence in the record of this matter that ACS arrested or detained Plaintiff. With respect to arrest by police officers, a claim for intentional infliction of emotional distress is successfully made out where a police officer is shown to have made a lawful arrest but to have used excessive force, or where an egregiously unlawful arrest has been made. See Kinberg v. District of Columbia, 1998 U.S. Dist. LEXIS, 339, 46-47 (D.D.C. 1998).

As discussed above, the arrest of Plaintiff was based on probable cause, and that probable cause determination by Officer Carter was wholly reasonable. Plaintiff has provided no evidence (nor could she) that the conduct of Officers Carter or Boone, or the ACS employees involved in this incident rose to the level of outrageousness (i.e. so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as intolerable in a civilized society, Smith v. District of Columbia, 882 A.2d 778, 794 (D.C. 2005)) that is required to establish a successful claim of intentional infliction of emotional distress. Nothing in the complaint, or in the deposition testimony of Plaintiff even comes close to demonstrating that the conduct of Officers Carter or Boone, or the ACS employees meets the standard of outrageousness that is required by District law.

There is an utter lack of evidence in the record of this case that would allow Plaintiff to prevail on a claim for intentional infliction of emotional distress against ACS. Plaintiff has completely failed to demonstrate that the conduct of the ACS employees was even unreasonable

7

let alone extreme and outrageous as is required to make out a successful claim of intentional

infliction of emotional distress.  Based on the lack of evidence in this record, the intentional

infliction of emotional distress claim against ACS must fail as a matter of law.

IV.    **Defamation Per Se**

Plaintiff alleges that she was damaged by the allegedly false statements made by ACS

employees about Plaintiff's criminality because the statements were defamatory per se and

lowered Plaintiff's standing and reputation in the community.

Plaintiff argues that the statements of the ACS employees to Officer Carter were

defamatory per se because they impute criminal activity.  Complaint at ¶ 34.  Defamation per se

is recognized in the District of Columbia as an exception to the general rule that defamation is

not actionable unless actual damages are demonstrated.  See Grossman v. Goemans, 631 F. Supp.

972 (D.D.C. 1986).  A defamation per se claim is therefore actionable even absent a showing of

actual damages.  This exception has traditionally been restricted by courts to imputation of

crimes with severe consequences, such as crimes leading to social ostracism.  Washburn v.

Lavoie, 357 F. Supp. 2d 210, 214 (D.D.C. 2004) citing Dan B. Dobbs et al., Prosser and Keeton

on Torts 788-89 (1984).

In this matter, the proper inquiry is whether the statements attributed to the ACS

employees are something from which the commission of a crime of moral turpitude can be

inferred.  Farnum v. Colbert, 293 A.2d 279, 281 (D.C. 1972).[2]  Plaintiff's allegation of

defamation per se fails as a matter of law because the statements attributed to the ACS

---

[2]  Turpitude is an "inherent baseness or vileness of principle words, or actions; shameful
wickedness; depravity."  Webster's Third New International Dictionary 2469 (3d ed. 1981).

employees do not impute to Plaintiff the commission of a crime of moral turpitude, i.e. a crime of shameful wickedness or depravity.   The crime for which Plaintiff was charged was a misdemeanor count of destruction of public property. This is not a crime of moral turpitude. See In re Sims, 861 A.2d 1 (D.C. 2004).  Plaintiff's claim of defamation per se must fail as a matter of law.

While Plaintiff's claim of defamation per se might obviate the requirement that Plaintiff show actual damages, a claim of defamation still requires that Plaintiff establish that ACS made a false and defamatory statement concerning Plaintiff; that injured Plaintiff in her trade, profession, community standing, or lower her in the estimation of the community; that ACS published the statement without privilege to a third party; that ACS's fault in publishing the statement amounts to at least negligence; and that the statement was either actionable as a matter of law irrespective of special harm or that its publication caused Plaintiff special harm.  Klayman v. Segal, 783 A2d 607, 613 n.4 (D.C. 2001).  Plaintiff has not (and cannot) establish that she has met the burden of establishing all four of those elements in this matter.

Initially, Plaintiff has failed to demonstrate that an ACS employee made any false statement concerning Plaintiff.  The record in this matter establishes that Mr. Gamble signaled Officer Carter (Exhibit 2 at 71:8) and that if he said anything he said "I got one".  Exhibit 2 at 71:10-11.  This statement by Mr. Gamble is simply not a false or defamatory statement concerning Plaintiff as is required by law.  Plaintiff has failed to allege in her complaint, or to establish otherwise that ACS (or any of its employees) made a false or defamatory statement concerning Plaintiff.

9

Secondly, a defamatory statement must injure Plaintiff in her trade, profession, community standing, or lower her in the estimation of the community. Plaintiff has made no such showing in this matter that any of the statement of Mr. Gamble has injured her in her trade or profession (Exhibit 3 at 42:12-19 and 43:1-7), or that her standing in the community has been lowered as a consequence of any statement made by Mr Gamble or any other ACS employee. An allegedly defamatory statement must be more than unpleasant or offensive, the language must make the plaintiff appear odious, infamous, or ridiculous. Howard v. Best, 484 A.2d 958, 988-89 (D.C. 1984). Plaintiff has failed to meet that standard.

Thirdly, Plaintiff has failed to offer any evidence that the allegedly defamatory statement was not made without privilege. In the District of Columbia, a qualified privilege exists when a statement about suspected wrongdoing is made in good faith to law enforcement authorities. See, e.g. Curry v. Giant Food Co., 522 A.2d 1283, 1294-1295 (D.C. 1987) and Mosrie v. Trussell, 467 A. 2d 475, 477 (D.C. 1983). Nothing in the record of this matter establishes that any ACS employee made any statement about Plaintiff in other than good faith. Nothing in the record of this matter establishes that any ACS employee made any statement about Plaintiff to anyone other than law enforcement authorities, i.e. Officers Carter and Boone.

Finally, Plaintiff has failed to establish that there was the necessary publication of the any statement with defamatory meaning by ACS employees as is required by law. Lyles v. Micenko, 404 F. Supp. 2d 182, 188 (D.D.C. 2005).

Plaintiff has wholly failed, as a matter of law, to meet her burden of establishing the required elements of either a defamation per se claim, or a defamation claim.

10

V.    **False Light**

Plaintiff alleges that she was damaged by ACS's depiction of her in a false light as a criminal.

A claim of false light publicity requires that Plaintiff show (1) publicity; (2) about a false statement, representation, or imputation: (3) understood to be out of and concerning Plaintiff; and (4) which places Plaintiff in a false light that would be highly offensive to a reasonable person. Klayman, 783 A.2d at 613-14.

Publicity means that the matter is made public by communicating it to the public at large, or to so many persons that the matter must be substantially certain to become one of public knowledge. See RESTATEMENT (SECOND) TORTS, section 652D, cmt. a, and Steinbach v. Cutler, 463 F. Supp. 2d 1 (D.D.C. 2006). Plaintiff has not demonstrated (and cannot demonstrate) that ACS has communicated any false statements about Plaintiff to the public at large. Plaintiff has not alleged, or established any statement actually made by ACS or its employees that is false, or which places Plaintiff in a false light. As noted earlier, the record in this matter establishes that Mr. Gamble signaled Officer Carter, and that Mr. Gamble may have said "I got one.". Neither the signal, nor Mr. Gamble's statement can be characterized as being communicated to the public at large as is required by law. See, Smith v. District of Columbia, 397 A.2d 213, 221 (D.C. 1979).

Additionally, Plaintiff has not demonstrated (and cannot demonstrate) that ACS has communicated any false statement about Plaintiff which places her in a false light that would be highly offensive to a reasonable person. Mr. Gamble's statement did not make Plaintiff appear odious, infamous, or ridiculous. As such, any statements made by ACS employees could not

11

place Plaintiff in a highly offensive light as a matter of law.

## VI.    Deprivation of Civil Rights (42 U.S.C. section 1983)

Plaintiff alleges that she suffered damages as a result of the District and ACS acting in concert to violate her rights under the Fourth Amendment to the U.S. Constitution.

Plaintiff argues that the allegedly false arrest and false imprisonment undertaken by Officers Carter and Boone constitute the violation of her rights under the Fourth Amendment, and consequently a violation of 42 U.S.C. section 1983.

Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). This qualified immunity defense applies to police officers for claims of liability under 42 U.S.C. section 1983. Anderson v. Creighton, 483 U.S. 635, 638-41 (1987); District of Columbia v. Evans, 644 A.2d 1008, 1014 (D.C. 1994).

Inasmuch as Plaintiff has alleged a violation of her rights under the Fourth Amendment, the appropriate inquiry is whether a reasonable officer could have believed [the officer's action] to be lawful, in light of the clearly established law and the information that the officer possessed. Anderson, 483 at 641. Here, the officers' conduct was lawful because Officer Carter had probable cause to arrest Plaintiff for destruction of public property. As noted above, probable cause for an arrest exists, if at the time of the arrest the facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information were sufficient to warrant a prudent man in believing that a crime was committed. See, Beck v. Ohio, 379 U.S. 89, 91 (1964).

12

The record in this matter establishes that at the time that Officer Carter decided to arrest Plaintiff for destruction of property, Officer Carter knew that (1) the ACS employees had inspected the parking meters prior to the beginning of the surveillance operation (Exhibit 1 at 40:14-17); (2) the ACS employees had found that each of the parking meters where in proper working order with nothing in the coin slot of each parking meter (Exhibit 1 at 40:14-17); (3) he had visually confirmed the observations of the ACS employees for each parking meter; (4) he and Mr. Gamble had observed Plaintiff approach the parking meter which had not been used by anyone else that day (Exhibit 1 at 39:1-2); (5) he and Mr. Gamble had observed Plaintiff approach the parking meter and put something into the parking meter coin slot (Exhibit 1 at 36:17-19 and 37:1-10); (6) as Plaintiff walked away from the parking meter, the parking meter flashed fail which it had not done before Plaintiff put something into the parking meter coin slot (Exhibit 1 at 38:10-12); (7) immediately after Plaintiff left the parking meter, Mr. Gamble approached the parking meter and observed a piece of paper in the coin slot (Exhibit 2 at 71:1-7); (8) Mr. Gamble had pointed out the piece of paper in the coin slot of the parking meter to him ((Exhibit 2 at 74:19-22); and (9) he had personally observed the piece of paper in the coin slot of the parking meter.

Those facts known to Officer Carter gave him probable cause to arrest Plaintiff for destruction of public property, and Officer Carter is thereby protected by qualified immunity from liability under 42 U.S.C. section 1983. Even if Officer Carter did not have probable cause to arrest Plaintiff, he would be entitled to the protection of qualified immunity because his decision to arrest Plaintiff was reasonable. See Hunter v. Bryant, 502 U.S. 224 (1991).

Plaintiff's claim for violation of 42 U.S.C. section 1983 against the government of the District of Columbia, similarly, must fail. A municipality can only be found liable under 42 U.S.C. section 1983 where the municipality itself causes the constitutional violation at issue. Monell v. Dep't. of Social Services of the City of New York, 436 U.S. 658, 694 (1978). In order for Plaintiff to prevail on her claim against the government of the District of Columbia, Plaintiff must demonstrate that a official custom or policy of the District government causes a deprivation of constitutional right. See Carter v. District of Columbia, 795 F.2d 116, 122 (D.C. 1986). The record in this matter fails to establish any evidence that any District government practice, custom, or policy was the cause of the alleged deprivation of a constitutional right, or that there was any constitutional deprivation suffered by Plaintiff. Plaintiff makes only the most bare allegation that the District government was indifferent. Plaintiff's burden in supporting her claim requires, however, that she present concentrated, fully packed, and precisely delineated scenarios demonstrating the existence of a pattern or policy that deprived Plaintiff of a constitutional right. See Carter, 795 F.2d at 125.

Plaintiff's theory of liability for ACS under 42 U.S.C. section 1983 is unclear, but would appear to be premised on a vicarious liability or respondeat superior theory. Neither theory creates liability for ACS under 42 U.S.C. section 1983. See City of Canton v. Harris, 489 U.S. 378 (1989).

14

## Conclusion

WHEREFORE, for the foregoing reasons defendant ACS respectfully requests that this Court grant its motion for summary judgment and dismiss each and every claim of the above-captioned matter with prejudice; and/or such other relief as this Court deems just and proper.

Respectfully submitted,

/s/ Frederick D. Cooke, Jr.

_____

Frederick D. Cooke, Jr., D.C. Bar No. 164608
Rubin, Winston, Diercks, Harris & Cooke, LLP
1155 Connecticut Avenue, NW, Suite 600
Washington, D.C. 20036
202 861 0870
202 429 0657 (facsimile)

Counsel for
ACS Government Systems, Inc.

15

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

NEFRETITI MAKENTA,     )
                                 )
        Plaintiff,          )
                                 )
                                 )    Civil Action No. 06-1093 (JR)
vs.                            )
                               )
DISTRICT OF COLUMBIA, et al.,  )
                               )
        Defendants.     )

## DEFENDANT ACS GOVERNMENT SYSTEMS, INC.
## STATEMENT OF MATERIAL FACTS WHICH ARE NOT IN DISPUTE

Defendant ACS Government Systems, Inc. (hereinafter "ACS"), by and through undersigned counsel, hereby submits the following material facts that are not in dispute:

1.     ACS, in conjunction with Metropolitan Police Officer Carter, was part of a surveillance operation in an area of the District where working parking meters had frequently been rendered into non-working meters.  Exhibit 1, Deposition of David Carter at57: 10-22 and 58: 1-11; Exhibit 1 at 8:20-22 and 9:1-7.

2.     Prior to the arrest of Plaintiff, the parking meter that she used was in proper working order and did not have a fail sign on it.  Exhibit 1 at 45:13-20.

3.     Officer Carter and ACS employee Aaron Gamble observed Plaintiff putting objects into the meter and then saw the fail sign flash while she was at the meter.  Exhibit 1 at 23:15-22 and 27:4-12.  Exhibit 2, Deposition of Aaron Gamble at 67:4-7 and 71:1-7.

4.   After Plaintiff left the meter, the meter was immediately inspected by Aaron
     Gamble and a piece of paper was discovered to be in the coin track of the
     parking meter. Exhibit 1 at 46: 9-15. Exhibit 2 at 71:1-7.

5.   Aaron Gamble pointed out to Officer Carter the piece of paper that he had
     observed in the coin track of the parking meter that had not been in the
     parking meter before Plaintiff was seen putting something into the parking
     meter. Exhibit 1 at 48:2-21. Exhibit 2 at 74:19-22 and 71:20.

6.   Aaron Gamble opened the parking meter and showed the piece of paper that
     had been "jammed " into the coin track of the parking meter to Plaintiff.
     Exhibit 2 at 76:18-22.

7.   Officer Carter believed that Aaron Gamble had a totally unobstructed view of
     Plaintiff at the parking meter and had no reason to question Mr. Gamble's
     observation. Exhibit 1 at 48:22 and 49:3-9.

8.   Officer Carter had reason to believe that Plaintiff had committed the crime and
     acted in accordance with his belief when he arrested her. Exhibit 1 at 51: 7-
     16.

9.   Officer Kenneth Boone testified that when he first arrived on the scene, Officer
     Carter had already initiated contact with Plaintiff. Exhibit 4, Deposition of
     Kenneth Boone at 20:15-22 and 21:1.

10.  Officer Boone testified that when he arrived on the scene, he did not see
     anything that struck him as an improper or unlawful arrest. Exhibit 4 at 71:
     14-18.

11.   Officer Boone testified that based upon what he observed at the scene, he reasonably believed that Plaintiff had committed a crime.  Exhibit 4 at 73: 12-20.

12.   Plaintiff testified that she did not put any paper in the parking meter and that the arresting officers were mistaken to think so.  Exhibit 3, Deposition of Nefretitti Makenta at 40: 7-14.

13.   Plaintiff testified that the officers informed her that she was being arrested because she had put paper into the parking meter.  Exhibit 3 at 40:19-22.

14.   Plaintiff testified that she was told that she was being arrested because somebody said they saw something, but that whatever the officers were told about what somebody saw, they were mistaken.  Exhibit 3 at 41:10-15.

15.   Plaintiff testified that she made it difficult for the officers to handcuff her.  Exhibit 3 at 29:3-10.

Respectfully submitted,

/s/ Frederick D. Cooke, Jr.

Frederick D. Cooke, Jr., D.C. Bar No. 164608
Rubin, Winston, Diercks, Harris & Cooke, LLP
1155 Connecticut Avenue, NW, Suite 600
Washington, D.C. 20036
202 861 0870
202 429 0657 (facsimile)

Counsel for ACS Government Systems, Inc.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **NEFRETITI MAKENTA**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | Civil Action No. 06-1093 (JR) |
| vs. | ) | |
| | ) | |
| **DISTRICT OF COLUMBIA, et al.,** | ) | |
| | ) | |
| Defendants. | ) | |

## <u>ORDER</u>

Upon consideration the motion for summary judgment filed herein by Defendant ACS Government Systems, Inc. ("Defendant ACS"), the supporting memorandum of points and authorities, any opposition thereto, and the record herein, it is this _____ day of _____, 2007 ORDERED that the motion is hereby GRANTED; and it is

FURTHER ORDERED, that judgment as a matter of law is hereby entered in the above-captioned matter in favor of Defendant ACS.


_____
Judge James Robertson